IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PEGGY A. CROUTCH                                                                                        PLAINTIFF

v.                                                     CIVIL ACTION NO. __1:24cv4 HSO-BWR__

STATE FARM FIRE AND
CASUALTY COMPANY                                                        DEFENDANT

**ORIGINAL COMPLAINT**
**(Jury Trial Demanded)**

COMES NOW, Plaintiff Peggy A. Croutch, and presents her Original Complaint against State Farm Fire and Casualty Company, as follows:

**I.**

**PARTIES**

1.1    Peggy A. Croutch ("Plaintiff") is an adult resident citizen of Harrison County, Mississippi.

1.2    State Farm Fire and Casualty Company ("State Farm") is an insurance company organized under the laws of Illinois and registered to do business in Mississippi and process may be issued on the Mississippi Insurance Commissioner, upon State Farm's registered agent for service of process at the United States Corporation Company, 109 Executive Drive, Suite 3, Madison, Mississippi 39110, or in any other manner allowed under the Mississippi Rules of Civil Procedure.

**II.**

**VENUE AND JURISDICTION**

2.1    Subject matter jurisdiction is proper in this Court.

2.2   Venue is proper in this Court as some or all of the events giving rise to this claim occurred in the First Judicial District of Harrison County, Mississippi, and the property at issue in this lawsuit is located in the First Judicial District of Harrison County, Mississippi.

### III.

### FACTS

3.1   Plaintiff, who is approximately 91 years of age, is the owner of property located at 3404 Sabine Street, Gulfport, MS 39501 ("the Subject Property").

3.2   State Farm issued Homeowner Insurance Policy No. 24-01-8629-4, coverage form HW-2124 ("the Subject Policy"), to Plaintiff which, at all times relevant, provided insurance coverage for, among other coverages, Plaintiff's Dwelling, Other Structures, Personal Property, Debris Removal, and Loss of Use for the Subject Property.  Plaintiff possessed $198,900 in coverage for her Dwelling and $149,175 in coverage for her Personal Property, among other coverages.

3.3   On January 10, 2021, substantial damage occurred to the Subject Property as a result of a fire loss, which is listed by the Subject Policy as a covered peril.

3.4   Thereafter, Plaintiff, who is 92 years of age, promptly made a claim with the assistance of her daughters under the Subject Policy for all damage to the Subject Property as well damage to her personal property caused by the fire loss.  The State Farm claim number for Plaintiff's claim is 24-15J9-27Z.

3.5   On or about January 12, 2021, Plaintiff retained Teddy Bears Restoration & Carpet Cleaning to serve as a contractor on her claim.

3.6 On or about February 4, 2021, Mr. Bobby Ware ("Mr. Ware") of Teddy Bears Restoration & Carpet Cleaning spoke with State Farm's adjuster Kevin Crow, advising that Plaintiff's claim under her Dwelling coverage was a total loss.

3.7 Thereafter, State Farm delayed review of the claim purportedly because "[p]hotos to fully support the claim ha[d] not been provided." Mr. Ware responded to State Farm that approximately 350 photographs had been uploaded and sought further directions regarding how many more would be needed.

3.8 Thereafter, State Farm reassigned Plaintiff's claim another adjuster named Jackie Johnson ("Ms. Johnson"). During the course of her review, Ms. Johnson did not require that certain information be submitted such as flooring sampled due to the fact that policy limits had been reached.

3.9 By letter dated March 29, 2021, State Farm notified Plaintiff that their estimate to repair or replace the Subject Property was $221,688.34 but that payment would be made in the amount of $183,935 on account of depreciation and Plaintiff's deductible.

3.10 For unknown reasons, Plaintiff did not receive the above-referenced payment until April 19, 2021. Of this amount, only $177,112 was paid for replacing actual damage to the Dwelling of the Subject Property.

3.11 On May 4, 2021, Plaintiff's daughter emailed State Farm seeking information about numerous issues related to the Subject Policy in light of the fact that Plaintiff's home was valued and insured for (which was $198,900) significantly much more than the amount paid on the claim for damage to the structure of the Subject Property.

3.12 On May 14, 2021, State Farm responded regarding Plaintiff's claim for Personal Property to advise that it had "received the 22pgs of inventory you submitted. At this time we are

unable to accurately process them as they are incomplete or not inventoried correctly. The inventory you submitted groups items by either category or room with a total replacement cost."

3.13    Thereafter, Plaintiff's daughter notified State Farm that her brother had sustained an injury by stepping on a nail in the rubble of damage to the Subject Property as a result of the loss. On May 20, 2021, pursuant to State Farm's instructions, Plaintiff's daughter submitted documentation to State Farm of the injury sustained by her brother, explaining that her brother was receiving treatment for this injury at Memorial Hospital at Gulfport in the Wound Care Department and attaching documentation of same to her correspondence. State Farm never responded to this correspondence.

3.14    On July 19, 2021, following State Farm's directives, Plaintiff's personal property loss inventory was submitted using the State Farm online tool for personal property loss submission. Plaintiff's daughter requested that State Farm respond to this submission so that Plaintiff would know it had been received.

3.15    On August 12, 2021, Plaintiff's daughter again emailed State Farm noting as follows in response to State Farm's directives to provide additional detail regarding Plaintiff's inventory of personal property: "1st Inventory submitted. Please let me know that you received it. Please call me 228-297-2243."

3.16    On August 26, 2021, Plaintiff's daughter again emailed State Farm, as follows: "Please let me know that you received this inventory. Please call me 228-297-2243[.] I submitted the inventory for Claim #24-15J9-27Z[.] Is there anything else we need to do for this inventory. I can also download pictures, if that helps."

3.17    On September 1, 2021, Plaintiff's daughter again emailed State Farm notifying that Plaintiff had completed the Personal Property inventory using the State Farm tool supplied to her

on or about July 19, 2021, and had requested that State Farm respond to let her know that the inventory had been received. Plaintiff's daughter also informed that because she had not received a response from State Farm, she had "resubmitted the inventory (just in case) with a request to just let [her] know if it was received" but that she had not received any response thus far. She also advised that no extension for Plaintiff's temporary living coverage had been received at that time.

3.18    On October 5, 2021, Plaintiff's daughter followed up with State Farm because she had not received a response to her prior inquiries, noting that she had complied with the assigned adjuster's directive to submit a completed inventory using the State Farm online tool. Plaintiff's daughter again inquired as to whether she needed to do anything further on her mother's claim for Personal Property loss.

3.19    On October 26, 2021, Plaintiff's daughter corresponded with State Farm again providing Plaintiff's Personal Property inventory, as follows:

> Greetings. After our conversation last week, I decided that I would still send you this completed Inventory for the contents of our home at 3404 Sabine Street; Gpt., MS using the State Farm Tool provided by our Claims Specialist (now our Estimator), Jaclyn Jones. (I included the Gmail from her, with instructions)
>
> As noted on the Gmail sheet – I failed to attach the inventory on June 10, 2021, as I thought I had. Oops! I apologize for that oversight.
>
> I am gonna move forward with completing the "other" inventory using the State Farm Tool that you provided. I FAXed this one, because, I don't want to, further, slow this process. Please use this FAX if you can.

3.20    On November 25, 2021, Plaintiff's daughter again corresponded with State Farm to provide the following information:

> Statement - Regarding the on-going process of getting back to permanent housing, the following is being done:
>
> 1. the house has been cleared of all contents and debris
> 2. the house has been gutted
> 3. the house continues to be sprayed to avoid mold

5

> 4. Professional Architect Troy Verrette (after holidays) will begin working with us to assess the possibility of restructuring the plans to fit within the insurance payment for the structure. I will provide his information, if necessary. He will initially work virtually after I submit a video of the house.
>
> At this time, we are requesting an extension for the housing provided which ends 11/30/2021.
>
> Thank you for your attention to this request.
>
> Please let me know that you received this email.

3.21   Thereafter, State Farm failed and/or refused to provide any payment on Plaintiff's claim for damaged Personal Property. Accordingly, Plaintiff was forced to retain counsel. Only after receiving a demand from Plaintiff's lawyer for immediate payment of Plaintiff's Personal Property claim did State Farm finally make a partial payment on Plaintiff's Personal Property loss in the amount of $64,235.64 enclosed within correspondence dated July 1, 2022. In so doing, State Farm enclosed a line-itemized worksheet of the inventory analysis conducted by State Farm. The worksheet contained a watermark on each page noting "DRAFT."

3.22   On August 18, 2022, Mr. Ware revised his scope estimate of the necessary repairs to the Dwelling Structure of the Subject Property and provided a line item detail totaling $239,716.06. That same day, Plaintiff's counsel corresponded with State Farm noting that the Subject Property would require a complete rebuild and making demand for policy limits on Plaintiff's Dwelling loss.

3.23   Thereafter, State Farm failed and refused to pay Plaintiff's claim in full and wrongfully withheld from Plaintiff approximately $21,788 of her Dwelling coverage despite the fact that the Dwelling was a total loss.

3.24   On January 18, 2023, Plaintiff's counsel made demand for additional payment on Plaintiff's Personal Property loss, which still had not been properly paid. In response, on February

14, 2023, State Farm made another payment in the amount of $26,148.94 on Plaintiff's claim for Personal Property loss.

3.25  Because State Farm still had not properly paid Plaintiff's claim for Personal Property Contents, on May 3, 2023, Plaintiff's counsel again made demand upon State Farm for full payment.

3.26  Due to State Farm's continued refusal to pay the full policy limits of Plaintiff's Dwelling coverage, Plaintiff was required to hire an engineer to inspect the Subject Property. On May 31, 2023, Plaintiff's engineer inspected the Subject Property in person.

3.27  On June 16, 2023, Plaintiff's engineer issued a preliminary report, which states as follows, in pertinent part:

> After reviewing the document and visiting the house, it is obvious that there is extensive fire damage to the building. I found damage to the roof structural system. It is my opinion that the roof has fire damage to the structural system (decking, rafters and engineered trusses). It is my opinion that this damage has caused a negative change in the structural capacity of the roofing system from the vertical perspective and lateral perspective. The connections between the decking and trusses are compromised. Also, the connection plates between truss members are compromised. Lastly, in the roof, the connection between the trusses and walls are compromised. Therefore, all of the roof components shall be removed and replaced.
>
> After reviewing the document and visiting the house, it is obvious that there is extensive fire damage to the building. I found damage to the floor structural system. It is my opinion that this damage has caused a negative change in the structural capacity of floors both from the floor's ability to support vertical loads and to support horizontal (wind) loads. The connections between the damaged floor and the elements that they support has been damaged and all are compromised. Therefore, all of the floor components that show any fire damage should be replaced including the connections between the floor and supporting structure below and/or above. Lastly, all decking/flooring shall be replaced on the first and second floor. All damaged joist that are in the crawl space shall be replaced.
>
> After reviewing the document and visiting the house, it is obvious that there is extensive fire damage to the building. I found fire damage to the wall structural system. It is my opinion that this damage has caused a negative change in the structural capacity of walls both from the wall's ability to support vertical loads and to support horizontal (wind) loads. The connections between the damaged walls

and the elements that they support has been damaged. Lastly, the connections between the damaged walls and the structures that support the damaged walls are compromised. Therefore, all of the wall components that show any fire damage should be replaced including the connections between the wall and supporting structure below and/or above. Lastly, any sheathing that is damaged shall be replaced including the wall studs that underlies the attached sheathing.

3.28   Based on the engineer's report, Plaintiff's contractor, Mr. Ware, issued a revised and supplemented line itemization for damage to Plaintiff's Dwelling in the amount of $268,557.97. By correspondence dated July 19, 2023, Plaintiffs' counsel provided State Farm with a copy of Mr. Montgomery's engineering opinion as well as his cv, a copy of Mr. Ware's supplemented scope estimate as well as all photographs supporting same, and again made demand of State Farm for fully payment of policy limits under Plaintiff's Dwelling coverage.

3.29   In response, on August 14, 2023, State Farm issued a reservation of rights letter to Plaintiff.

3.30   Thereafter, State Farm again performed an in-person inspection of the Subject Property on or about September 14, 2023.

3.31   Based on this additional inspection, on October 19, 2023, State Farm issued an additional payment by check in the amount of $464.45 for damage to the Dwelling structure of the Subject Property.

3.32   On November 30, 2023, almost three years after the loss, State Farm issued another check to Plaintiff for her Personal Property Contents loss, this one in the amount of $5,298.06.

3.33   At present, after nearly three years, State Farm has failed to properly pay numerous aspects of Plaintiff's claim, including properly paying amounts due and owing under the Subject Policy for damage to the Dwelling structure of the Subject Property, Plaintiff's damaged Personal Property Contents, Plaintiff's ALE, and the medical claim for injury sustained in the rubble to Plaintiff's family member, among other benefits owed such as demolition costs.

## IV.

## CAUSES OF ACTION

### Breach of Contract/Tortious Breach of Contract

4.1    Plaintiff incorporates by reference the prior allegations as if set forth fully herein.

4.2    Plaintiff and State Farm entered into a contract for homeowner's insurance (the Subject Policy). Pursuant to the Subject Policy, Plaintiff paid State Farm premiums every month for insurance coverage on the Subject Property. A loss to the Subject Property occurred during the Subject Policy coverage period.

4.3    State Farm failed to provide properly and timely investigate all aspects of Plaintiff's claim, failed to competently and fully repair/replace the damage to the Subject Property, and further failed to provide Plaintiff with all benefits owed to her under the Policy, described above. As a proximate result, Plaintiff has suffered damages and continues to suffer damages.

4.4    State Farm's conduct and such breach has been with gross, reckless, and malicious disregard for the rights of Plaintiff as amounting to a separate and independent tort resulting in damages to Plaintiff and justifying an award of actual as well as punitive damages in favor of Plaintiff.

### Breach of the Duty of Good Faith and Fair Dealing

4.5    Plaintiff incorporates by reference the prior allegations as if set forth fully herein.

4.6    Such actions are breaches of contract and the implied covenant of good faith and fair dealing contained under the respective policies. State Farm's conduct and such breach has been with gross, reckless, and malicious disregard for the rights of Plaintiff, resulted in damages to Plaintiff, and justifies an award of actual as well as punitive damages in favor of Plaintiff.

**Bad Faith**

4.7     Plaintiff incorporates by reference the prior allegations as if set forth fully herein.

4.8     The actions attributable to State Farm, as described above and incorporated herein, were committed with malice, gross negligence, and/or with intentional, willful, wanton, reckless and intentional disregard for the rights of Plaintiff.  Such actions include but are not limited to failing to properly pay the limits of coverage for damages to the Dwelling structure of the Subject Property, failing to properly and timely pay all benefits owed for damage to Plaintiff's Personal Property Contents damaged in the subject loss, failure to properly pay Plaintiff's ALE, and failure to properly pay the medial claim arising from injury to Plaintiff's family member, among other damages.  State Farm has failed to properly pay all amounts owed under the Subject Property without any arguable basis.  Such actions were without justification or an arguable reason and were committed in bad faith.  Consequently, State Farm is liable for punitive damages.  State Farm handled the claim with intentional, willful, and reckless disregard for Plaintiff's rights.

**Negligence/Gross Negligence**

4.9     Plaintiff incorporates by reference the prior allegations as if set forth fully herein.

4.10    State Farm failed to exercise the degree of care, skill, knowledge, and ability ordinarily possessed by members of its profession in performance of the Policy with respect to Plaintiff's claim for covered loss to the Subject Property.  State Farm's failure to exercise the care, skill, knowledge, and ability ordinarily exercised by members of their profession caused damage to Plaintiff.

4.11    Further, State Farm's actions in this matter constituted gross negligence and reckless disregard for the rights and property of Plaintiff.  State Farm's gross negligence and reckless disregard for the rights of Plaintiff was the direct and proximate cause of damages

sustained by Plaintiff. State Farm knew or should have known that its gross negligence and reckless disregard for the rights of Plaintiff would cause Plaintiff to sustain damages in this case.

### Infliction of Emotional Distress

4.12 Plaintiff incorporates by reference the prior allegations as if set forth fully herein.

4.13 As a direct and foreseeable consequence of the actions described above, Plaintiff has suffered severe mental anguish and emotional distress. State Farm's actions were performed either intentionally in an effort to cause Plaintiff to sustain and experience emotional distress and anguish, or State Farm's actions and/or omission were performed with gross negligence which resulted in mental and emotional distress and anguish being suffered by Plaintiff. Plaintiff's mental distress and anguish is a result of State Farm's extreme and outrageous conduct.

### V.

### DAMAGES

5.1 Plaintiff seeks damages for breach of contract, injuries, emotional distress, hedonic damages, all economic as well as noneconomic damages allowable under applicable law, and all other damages which will be shown at the trial of this case. Plaintiff demands actual, compensatory, incidental, and consequential damages as well as punitive damages in an amount in excess of the jurisdictional minimum of this Court. Plaintiff seeks all additional damages allowable under applicable law, which may include but are not limited to prejudgment interest, post-judgment interest, attorneys' fees, costs, and expenses.

**WHEREFORE**, Plaintiff respectfully requests a jury trial of this matter and prays that State Farm be called to answer this Complaint and that Plaintiff recovers all damages which may be awarded to her in this action, including all expenses and costs of this action, and such other relief as the Court and the jury deem just.

This, the 10th day of January, 2024.

                                      Respectfully submitted,

                                      PEGGY A. CROUTCH

                                      By: _____
                                                John W. Nisbett

OF COUNSEL:
Michael A. Heilman (MSB No. 2223)
John W. Nisbett (MSB No. 103120)
HEILMAN NISBETT POLK, P.A.
Meadowbrook Office Park
4266 Interstate 55 North, Suite 106
Jackson, Mississippi 39211
Telephone: (601) 914-1025
Facsimile: (601) 944-2915
mheilman@hnplawyers.com
jnisbett@hnplawyers.com